IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KENNETH WADE BURRESS                                                                    PLAINTIFFS
AND PRISCILLA BURRESS

VS.                                         NO. 1:01CV00072SMR

UNION PACIFIC RAILROAD COMPANY,
MISSOURI & NORTHERN ARKANSAS
RAILROAD COMPANY, INC., MISSOURI
PACIFIC RAILROAD COMPANY, JOHN
DOE I, JOHN DOE II, JOHN DOE III, JOHN DOE IV                    DEFENDANTS

MISSOURI & NORTHERN ARKANSAS
RAILROAD COMPANY, INC.                                          THIRD-PARTY PLAINTIFF

CONAGRA POULTRY COMPANY   THIRD-PARTY DEFENDANT

### REPLY OF CONAGRA POULTRY COMPANY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE ANY EVIDENCE ABOUT PUNITIVE DAMAGES

#### SUMMARY

Union Pacific Railroad Company ("UP") and Missouri and Northern Arkansas Railroad Company, Inc. ("MNAR") contend that evidence of punitive damages should be admitted at trial because punitive damages are relevant in considering the Railroads' "potential financial exposure." This argument is completely inconsistent with the terms of the Settlement Agreement which provide that the $5 million settlement was paid "solely for physical injuries actually sustained by Plaintiffs." Under the terms of the settlement, the Railroads have clearly acknowledged that the $5 million settlement does not cover any punitive damages. The Railroads cannot have it both ways and should be strictly held to their burden to establish that the $5 million payment was reasonable to compensate the Plaintiffs for the actual damages they sustained.

In addition, the duty of ConAgra Poultry Company ("ConAgra") to indemnify the Railroads under the Industry Track Agreement only applies to actual "losses" and does not

cover penalties such as punitive or exemplary damages. Punitive damages are not relevant and must be excluded from the jury's consideration under Fed.R.Evid. 403.

## ARGUMENT

### I. THE TERMS OF THE SETTLEMENT PRECLUDE THE CONSIDERATION OF PUNITIVE DAMAGES.

In their Opposition to ConAgra's Motion in Limine, the Railroads assert that in order to determine the reasonableness of the settlement, the "jury must have knowledge of all of the factors that the settling parties used to arrive at their decision." (See Response to ConAgra's Motion in Limine to Exclude any Evidence of Punitive Damages, Pg. 2). The Railroads refer to the deposition testimony of Gene Ludwig, an attorney who represented the Burresses, and David Littleton, counsel for MNAR in the underlying case. Both Ludwig and Littleton testified that punitive damages should be considered when evaluating a case for settlement. Id. at Pgs. 3-4. However, neither of these individuals participated in the decision to settle for the sum of $5 million. That decision was made solely by attorney Mike Flynn and Lexington Insurance Company ("Lexington"). In fact, David Littleton stated that he does not recall either Lexington or Flynn discussing punitive damages during the mediation. Littleton testified as follows:

> Q. In discussing the settlement of the case at mediation, did you hear any comments by Mr. Johnson [representative of Lexington] or Mr. Flynn as far as attributing value to this case for punitive damages and coming up with the figures they would offer to settle the case?
>
> A. No, sir.

(Exhibit B, Littleton Depo. 107:7-13).

In his previous submissions to the Court, Mike Flynn acknowledged that he represented Lexington at the mediation on March 9, 2004. (Filing No. 348, Letter Brief in Support of Opposition to ConAgra's Attempt to Depose Attorney Michael B. Flynn). At the time of the mediation, Lexington had agreed to defend and indemnify both UP and MNAR. According to UP:

> [T]he settlement, and the sum to be paid the [Burress] plaintiffs was solely determined by Lexington Insurance Company. UP was represented in the

2

> mediation when the settlement in this case was reached, however, by that time Lexington Insurance Company had undertaken defense and indemnity of UP in this case, and UP had no involvement in determining the amount which would be paid to plaintiff in connection with the settlement of the claim itself...

(Filing No. 349, Exhibit A to June 20, 2007 Letter Brief regarding ConAgra's Right to Depose Attorney Michael Flynn). UP and MNAR had no involvement in the decision to settle or the amount that would be paid.

The ultimate settlement negotiated by Flynn and Lexington clearly reflects that punitive damages were not a consideration and that the $5 million payment represents the actual damages sustained by the Burresses. The Mediation Settlement Agreement dated March 9, 2004 provides that none of the settlement proceeds reflect "punitive" or "exemplary" damages. (Exhibit 1, Mediation Settlement Agreement, Pg. 2). The final Release and Confidential Settlement Agreement also provides that "no part of the consideration" paid was for punitive or exemplary damages. (Exhibit 2, Release and Confidential Settlement Agreement, Pg. 5).

Allowing evidence of punitive damages directly conflicts with the terms of settlement which are the subject of the Railroads' claim for indemnity against ConAgra. Such evidence is not probative in these proceedings. The Railroads contend that "removing this evidence from the jury's consideration is the effective equivalent of misleading the jury." (Response to ConAgra's Motion in Limine to Exclude any Evidence of Punitive Damages, Pg. 6). The opposite is true. The jury will certainly be mislead if punitive damages are considered. The sum of $5 million was never intended by the Railroads or Lexington to cover punitive damages. The Railroads should be held to their burden to prove that the settlement was reasonable and the <u>actual damages</u> sustained by the Burresses support the $5 million settlement.

## II.   THE INDEMNITY CONTRACT DOES NOT COVER PUNITIVE DAMAGES.

Even if the terms of settlement included punitive damages, the jury should not consider such evidence because the indemnity clause does not cover punitive or exemplary damages. The Railroads' right to seek indemnity from ConAgra is expressly limited by the terms of the Industry Track Agreement. The Industry Track Agreement uses the term "loss" to define

ConAgra's obligation to indemnify. "Loss" is defined as "damage to the property of any Third Person or Party and/or injury to or death of any Third Person or Party." (Industry Track Agreement, § 4(a)(5)). The indemnity clause also specifically covers litigation and other expenses but makes no provision for the recovery of punitive or exemplary damages. Id.

In its Order on Summary Judgment, this Court concluded that ConAgra is obligated to indemnify the Railroads for all "loss" as defined under the terms of the Industry Track Agreement. (Filing No. 266, Summary Judgment). The Court did not specify or define what items of "loss" are payable under the indemnification clause. In considering the scope of coverage under an indemnification clause, the following rules of construction apply:

> [I]n contracts of indemnity, the losses to be indemnified must be clearly stated and the intent of the indemnitor's obligation to indemnify against them must be expressed in clear and unequivocal terms and to such an extent that no other meaning can be ascribed. *The intent to extend the obligation to losses from specific causes need not be in any particular language, but unless this intention is expressed in the plainest words, it will not be deemed that the party undertook to indemnify against it.* (Emphasis added).

Jones v. Sun Carriers, Inc., 856 F.2d 1091, 1094 (8th Cir. 1998)(citing Weaver-Bailey Contractors, Inc. v. Fiske-Carter Const. Co., 657 S.W.2d 209, 210 (Ark. App. 1983)). The language in an indemnity agreement must be "clear and unequivocal" and the liability of the indemnitor must be "spelled out in unmistakable terms." Arkansas Kraft Corp. v. Boyed Sanders Const. Co., 764 S.W.2d 452, 453 (Ark. 1989).

ConAgra submits that the term "loss" as defined in the Industry Track Agreement does not encompass punitive damages. Under Arkansas law, punitive damages are designed to punish the wrongdoer and deter egregious conduct. See In re Aircraft Accident at Little Rock Arkansas, 231 F.Supp.2d 852, 875 (E.D. Ark. 2002). Such damages are not intended to "compensate an injured party for the wrong suffered, but are instead a penalty inflicted by the law on a guilty party." Id. at 876; Edwards v. Stills, 984 S.W.2d 366, 373 (Ark. 1998)(stating that punitive damages are "to be a penalty for conduct that is malicious or done with the deliberate intent to injure another").

ConAgra is not obligated to indemnify UP and MNAR for punitive damages and other amounts paid in excess of the "losses" actually sustained by the Burress Plaintiffs.

## CONCLUSION

For the foregoing reasons, ConAgra renews its request to exclude all evidence concerning punitive damages.

Dated this 28th day of May, 2009.

                              Respectfully Submitted,

                              BARBER, MCCASKILL, JONES & HALE, P.A.
                              Attorneys for ConAgra Poultry Company
                              2700 Regions Center
                              400 West Capitol Avenue
                              Little Rock, AR  72201-3414
                              (501) 372-6175


By:       /s/ Robert L. Henry, III
     Robert L. Henry, III    AR BIN 72054
     rhenry@barberlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

| | |
|---|---|
| Kirkman T. Dougherty | kdougherty@hardinlaw.com |
| John Young | jyoung@flynnassoc.com |
| Aaron A. Clark | aclark@mcgrathnorth.com |

                                                  /s/ Robert L. Henry, III
Robert L. Henry, III       Bar# 72054
Attorneys for ConAgra Poultry Company
Barber, McCaskill, Jones & Hale, P.A.
2700 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3414
(501) 372-6175
E-mail: rhenry@barberlawfirm.com